Exhibit E

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

---

**GARDEN CITY BOXING CLUB, INC.,**
as Broadcast Licensee of the **May 3, 2003**
**DeLaHoya/Campas**, Program,

                     Plaintiff,

-against-

SHANE A. HIGGINS, *et al.*,

                     Defendants.

**Plaintiff's Affidavit for Default**
Civil Action No. 04-12014 PBS/JGD
Honorable Patti B. Saris

---

STATE OF CALIFORNIA    }
                            }ss.:
COUNTY OF SANTA CLARA}

JOSEPH GAGLIARDI, being duly sworn, deposes and states the following:

1. I am President of Plaintiff, Garden City Boxing Club, Inc., and, as such, am fully familiar with the facts, circumstances and proceedings heretofore had herein.

2. I make this Affidavit in support of Plaintiff's request to recover statutory damages, including filing fees, service of process fees, investigative costs and interest in the within request for judgment by default.

3. Plaintiff, Garden City Boxing Club, Inc., owns the rights for the commercial distribution of the DeLaHoya/Campas fight which was held on May 3, 2003. My company thereafter marketed the sub-licensing of the broadcast to commercial establishments in the State of Massachusetts for a fee.

4. To explain the history of Plaintiff's claim, your deponent submits that shortly after the advent of Pay-Per-View broadcasts, of which our company stands at the forefront, we began to

experience a serious erosion of the sales to commercial establishments throughout the United States of America. Thereafter, we endeavored to find out what was the basis for the erosion. Much to our disappointment, we discovered that the root cause of the erosion of our customer base was the piracy of our broadcasts by unauthorized and unlicensed establishments.

5.  Plaintiff has invested millions of dollars in the promotion of boxing broadcasts, and, with the increased frequency of signal piracy, our legal sales have eroded significantly.

6.  In response, we embarked upon a program which was designed to identify and prosecute the commercial establishments which stole our broadcasts.

7.  Prior to the DeLaHoya/Campas broadcast, Garden City Boxing Club, Inc., authorized independent investigative agencies to utilize independent auditors who were assigned to identify establishments that unlawfully exhibited our Program.

8.  To insure that only illegal locations were visited by the auditors, a list of authorized and legal locations who paid the required fee to broadcast the DeLaHoya/Campas fight which was held on May 3, 2003, was distributed to all investigative agencies prior to visiting any unauthorized locations on May 3, 2003.

9.  It is essential that I communicate to the Court that to the best of my knowledge this programing is not and cannot be "mistakenly or innocently intercepted." Some methods that a signal pirate can unlawfully intercept and broadcast such program illegally are as follows without limitation:

   A.  The use of a "blackbox" which is purchased for a fee and when installed on a cable TV line will allow for the descrambled reception of a pay-per-view broadcast, or

   B.  The purposeful misrepresentation of a commercial establishment as a residential property would allow the purchase of a pay-per-view broadcast for the event at the

residential price of $54.95, or

    C.    The use of a illegal cable drop or splice from an apartment or home adjacent to the commercial establishment premises who would purchase the broadcast at a residential price and divert the program to the commercial establishment and/or

    D.    The same initial actions being employed with respect to a "DSS Satellite Systems" or a "C-Band Satellite System."

These forms of satellite theft also involve the misrepresentation of a residential location, purchase of illegal unincryption devices, and/or the purchase of illegal satellite authorization codes which are readily available on the Internet and in various publications which are presently unregulated in the Nation of Canada. Attached hereto and made a part hereof are various examples of same.

    10.    Turning these facts to the matter before the Court, I have been advised by counsel that the Court has the discretion in the awarding of damages for these nefarious and illegal activities.

    11.    It is respectfully submitted to this honorable Court that the unchecked activity of signal piracy not only has resulted in my business being severely damaged, but also has a negative effect upon lawful residential and commercial customers of cable and satellite broadcasting whose costs are necessarily increased significantly by these illegal activities.

    12.    I believe that such acts of piracy have cost my company millions of dollars in the last few years, while at the same time causing a reduction in our lawful business resulting from the perceived lack of consequence for such unlawful interception.

    13.    I, therefore, humbly ask this Court to grant the maximum allowance for statutory damages due to the fact that such actions are *per se* intentional and do not and cannot occur without the willful and intentional modification of electronic equipment, the business misrepresentation of

a commercial establishment as residential, or, the removal of cable traps and/or devices designed to prevent such unauthorized exhibits.

**WHEREFORE,** your deponent respectfully requests that this Court find the Defendants in default and grant the Plaintiff's request for statutory damages in the sum of up to $100,000.00 plus $10,000.00 as additionally allowed plus interest at the rate of nine (9%) percent from the date of the fight, including litigation fees as outlined in the Motion for Default for each of Defendants whom are in default.

Dated: December 14, 2004

_____
JOSEPH GAGLIARDI,
President, Garden City Boxing Club, Inc.

Sworn to before me on this 14 day of December, 2004.

_____
Notary Public- State of California

SHARON CUNNINGHAM
COMM. #1440152
Notary Public-California
SANTA CLARA COUNTY
My Comm. Exp. Sept 19, 2007